IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. JKB-15-0615 |
| GREGORY LEE BUTLER | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This dispute arises out of the sentencing of Gregory Lee Butler. Specifically at issue is the identity of the unnamed "victim(s)" referenced in the restitution order. (Restitution Order at 5, ECF No. 81.) Now pending before the Court is the Government's Motion to Correct Clerical Error and Exclude Witness Testimony from an upcoming evidentiary hearing. (Mot. Correct Clerical Error, ECF No. 118.) For the reasons set forth below, the Court will deny the motion.

### I.   *Factual Background*

On July 6, 2016, Gregory Lee Butler pled guilty to one count of Obstruction of Firefighters During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). (ECF No. 55.) The civil disorder at issue involved the destruction of a CVS Pharmacy during the civil disturbances in Baltimore on April 26, 2015. The Honorable J. Frederick Motz presided over Butler's sentencing. At the sentencing hearing, several witnesses testified as to whether Butler's conduct—principally, puncturing a hose as firefighters attempted to put out a fire at the CVS—contributed to the CVS's destruction. (*See generally* Sentencing Transcript, ECF No. 118-1.) After considering the relevant testimony and the record before him, Judge Motz imposed a sentence of time served

1

(approximately 20 days), a three-year period of supervised release, and a restitution order of $1,000,000. (*Id.* at 126–27.)

The restitution order provided that the restitution payments were to be paid to the Clerk of the United States District Court for the District of Maryland "[f]or disbursement to victim(s)." (Restitution Order at 5.) The order did not identify the alleged victims. (*Id.*) The accompanying Statement of Reasons indicated that the relevant victim information was included in an attachment ("see Victim Information attachment"), but no attachment was filed. (Statement of Reasons, ECF No. 82.)

On November 19, 2019, Butler requested that the Court modify the restitution order. (Mot. Modify, ECF No. 104.) Butler's request relied, in part, on the lack of specificity about the identity of the victims or the money owed to them. (*Id.* at 5–6.) Because Judge Motz is no longer hearing cases, the matter was reassigned to the undersigned.

The Court held a hearing on December 13, 2019 to discuss Butler's motion. At the hearing, the Court concluded that it was facially apparent from the restitution order that Judge Motz had determined "there was a loss, [] there was a victim, and [Butler] owed a million dollars in restitution." (December 2019 Hearing Transcript at 15, ECF No. 113.) However, it also concluded that it was impossible for the Court to discern the identity of the victim(s) from the record. (*Id.*) The Court scheduled an evidentiary hearing for February 3, 2020 to address the question of who or what are the victim(s) in this case. (ECF No. 111.)

## II.    *The Government's Motion*

One week before the February 3, 2020 evidentiary hearing was scheduled to occur, the Government filed a motion requesting that the Court correct the "clerical omission" of victim information in the restitution order by supplying the victim information the Government provided

at sentencing.[1] (Mot. Correct Clerical Error at 1.) The Government also requested that the Court exclude testimony from Karl Zimmerman, former Deputy Chief of the Baltimore City Fire Department (BCFD), at the upcoming evidentiary hearing, as his testimony would be "duplicative" and "irrelevant." (*Id.* at 23.)

Underlying the Government's motion are two central issues: (1) whether the identity of the unnamed victim(s) in the restitution order can be inferred from the record, and (2) if not, whether it is within the Court's authority to modify the restitution order to correct this deficiency. The Court addresses each issue in turn.

### *1. Whether the Record Sufficiently Identifies the Victim(s)*

The Government contends that the identities of the "victim(s)" referenced in the restitution order are clear from the record, and therefore, no further analysis into these identities is needed. The Court disagrees. To support its contention, the Government points to the victim information it provided at sentencing and contends it is reasonable to infer that Judge Motz implicitly relied and adopted this information in signing the restitution order. (Mot. Correct Clerical Error at 5–6, 21.) It might be possible to draw such an inference if Judge Motz had ordered a restitution amount exactly equal to the amount the Government provided at sentencing. But at sentencing, the Government contended that Butler owed $1,191,762.56 to victims, and Judge Motz ordered a restitution payment of $1,000,000. (*Id.* at 13.) Because Judge Motz did not accept the Government's position regarding the amount of restitution wholesale, the Court cannot assume that he accepted the Government's position regarding the identity of the victim(s) wholesale.

---

[1]     Specifically, the Government requests the Court supplement the restitution order with the following victim information: Baltimore City Fire Department (entitled to $280) and S Stone LLC and Erie Insurance (jointly entitled to $999,720). (Mot. Correct Clerical Error at 25.)

The Government's reliance on the off-the-record email it sent to Judge Motz's chambers and the Deputy Clerk regarding the identity of the victim(s) is similarly unpersuasive. (*Id.* at 14–15.) The Government asserts that because this email was sent two days before Judge Motz signed the Statement of Reasons, it is reasonable to infer that Judge Motz viewed the email and relied upon its contents in signing the restitution order. This inference is a stretch. Not only is this email not a part of the formal record, but there is no affirmative indication that Judge Motz viewed it or relied upon it.[2]

Put simply, this dispute involves a criminal case with a restitution order of $1 million; these circumstances require precision and clarity, not the cobbling together of extrinsic evidence and inferences not clearly supported by the record. As such, the Court reiterates the conclusion it reached at the December 2019 hearing: the identity of the victim(s) Judge Motz identified is not apparent from the record. Therefore, the Court will hold a hearing on February 3, 2020 to determine the identity of any victim(s) in this case. Because the testimony of former Deputy Chief Zimmerman is relevant to this question, it will permit testimony from him.

### 2. *The Court's Authority to Modify the Restitution Order*

The Government asserts that the Court has the authority to remedy simple clerical errors in the restitution order, but it cannot make any substantive adjustments. (*Id.* at 9.) According to the Government, this means the Court can "add[] or clarify[] victims and alter[] monetary distributions," but it cannot "change the overall restitution amount." (*Id.*)

---

[2] Further, it is not clear that the contents of this email actually support the Government's position. The redacted version of the email appears to identify four victims, but the Government asserts that the record plainly shows Judge Motz identified three victims. It is possible this discrepancy can be explained by an unredacted version of the email—which the Government has said it will provide at the upcoming hearing—but the Court notes that the redacted version appears to only underscore the confusion about the identity of the victim(s) in this case.

The Government cites a plethora of authority for the proposition that restitution orders under the MVRA generally cannot be substantively modified after they become final. (*See id.* at 9–13.) The Court agrees that this is the general rule. *See* 18 U.S.C.A. § 36604(o) ("an order of restitution is a final judgment"); *United States v. Roper*, 462 F.3d 336, 339 (4th Cir. 2006) ("[D]istrict courts are generally without authority to remit restitution orders entered under the MVRA.") But the authorities that underlie this rule—which are heavily cited by the Government—are all based on the premise that there was, at one time, a discernable restitution order. In other words, a reviewing court could understand what the restitution order commanded, even if it did not agree with it on the merits. For the reasons explained above, such an order does not exist here. Although the relevant authority clearly prizes the finality of restitution orders, the Court does not believe the relevant authority requires a court to enforce a judgment the meaning of which it cannot discern.

The Government cautions in its motion that the Court's approach here could open up "an untold number of final Judgments in criminal cases that may be vulnerable to belated challenges." (Mot. Correct Clerical Error at 2.) This overstates the breadth of the Court's holding. The circumstances of this case are highly unusual: the critical attachment containing the victim information is missing, the judge who presided over the sentence is no longer sitting and cannot clarify his conclusion regarding the identity of the victim(s), and the sentencing record does not reliably fill the missing gaps. The Court merely holds that a new inquiry into the identity of victim(s) is warranted under these circumstances; it does not purport to make any assertions about the reviewability of restitution orders outside of this narrow context.

## III.    Conclusion

For the foregoing reasons, an Order shall enter denying the Government's motion.

DATED this 30 day of January, 2020.

BY THE COURT:

James K. Bredar
Chief Judge